BENJAMIN F. BARNARD *vs*. LILLEY EATON & another.

This court have no appellate jurisdiction, under the insolvent act of 1838, *c*. 163, § 3, of an application by a mortgagee for a sale of the mortgaged property, and an appropriation of the proceeds towards payment of his debt; but under § 18, of the same statute, they have original jurisdiction to hear and adjudicate upon the application of a mortgagee, under § 3; and, therefore, where a petition was presented to this court, praying a revision of the proceedings of a master in chancery, in relation to such an application, on the ground, that the petitioner had appealed from the adjudication of the master thereon, and it appeared, that the petition had all the characteristics of an original proceeding, the court entertained jurisdiction and adjudicated upon it accordingly.

Where a minor entered into a partnership with a person of full age, which was dissolved before the former became of age, and, upon the dissolution, the minor assigned all his interest in the concern to the other partner, who, in consideration thereof, gave the minor his promissory note for the amount of such interest, secured by a mortgage of the partnership property, and such partner afterwards became insolvent, it was held, that the mortgagee might proceed under the act of 1838, *c*. 163, § 3, in order to have the mortgaged property sold towards payment of his debt, notwithstanding his minority at the time of the transaction.

If the application of a mortgagee, under the insolvent act of 1838, *c*. 163, § 3, for a sale of the mortgaged property by the assignee of the mortgagor, be resisted on

Barnard *v.* Eaton & another.

the ground, that the mortgage is fraudulent, as having been made to delay or de- feat creditors, or with a view to give the mortgagee an unlawful preference, it is not sufficient, in the answer to such application, to aver the fraud or preference in general terms, but the same must be set forth particularly, and all the evidence in support thereof laid before the court in some form.

A mortgage being made of all the goods, &c., then in the mortgagor's store, and of all goods, &c., which might be afterwards substituted by the mortgagor for those which he then possessed,— the mortgage providing that until default the mort- gagor might use and make sales of the mortgaged property, other goods, &c., of equal value being substituted therefor,— it was held, that the mortgage could not apply to goods not in existence, or not capable of being identified, at the time it was made, or to goods intended to be afterwards purchased to replace those which should be sold.

An agreement, in a mortgage of the stock of goods then in the mortgagor's store, that, until default, the mortgagor might retain possession of the property, and make sales thereof in the usual course of his trade, other goods of equal value being substituted by him for those sold, will not authorize the mortgagor to put the mortgaged property into a partnership, as his share of the capital.

Where the mortgagee of personal property commenced a suit for the debt secured thereby, and caused the mortgaged property to be attached and held by the offi- cer until the mortgagor took the benefit of the insolvent law, and then waived the attachment, and allowed the property to be taken into the custody of the messenger, it was held, that the mortgagee was not thereby precluded from avail- ing himself of his mortgage, under the third section of the act of 1838, *c.* 163.

THIS was a petition, in which the petitioner represented, that, as one of the creditors, by note secured by a mortgage of personal property, of Charles H. Stearns, an insolvent debtor, he presented a petition to George W. Warren, esquire, one of the masters in chancery for this county, before whom the proceedings in insolvency were instituted, praying that the mortgaged property might be sold, and the proceeds thereof applied to the payment of his debt, and that he be admitted as a creditor for the residue; that the master, after a hearing, refused to grant the prayer of the petition; that the petitioner was aggrieved by such decision; and that he thereupon claimed an appeal from the decree, and gave notice thereof to the assignee and to the master. The conclusion of the petition was as follows: "Your petitioner therefore appeals to this court from said decision, and humbly prays that said petition may be heard before this court, and that this court would make such orders and decrees therein as law and justice may require."

This petition was filed at the October term, 1846, and, at

the same term, the respondents, who were the assignees of Stearns, appeared, and, protesting that the appeal could not be sustained, because the jurisdiction of the master, having attached upon the subject matter, was exclusive and final, put in their answer to the petition.

The parties afterwards submitted the cause to the court, upon an agreed statement of the facts, which were in substance, as follows: —

On the 1st of April, 1844, the petitioner entered into partnership with the insolvent, then a trader at South Reading, and continued in business with him until the 1st of April, 1845, when the partnership was dissolved. During this time the petitioner was a minor, under the guardianship of Amos Batchelder, and did not arrive at full age until the 9th of July, 1845. On the dissolution of the partnership, the petitioner received for his interest therein the insolvent's note for $1100, payable on demand, with interest annually, and secured by a mortgage of personal property. The note, though not actually delivered until the 8th of May, 1845, when the mortgage was made and bore date, was dated the 1st of April, 1845, the day of the dissolution, and was signed by William Stearns, jr., as surety.

The property mortgaged was described as all and singular the goods, wares, and merchandise, consisting of dry goods, crockery, hardware, groceries, provisions, &c., together with the shop furniture, then in the store occupied by the mortgagor in South Reading, and also all the goods, wares and merchandise, which might be afterwards substituted for those which the mortgagor then possessed; including in the conveyance both the goods, wares, and merchandise, which then were or might afterwards be in the store then occupied by the mortgagor, and also those goods, wares and merchandise which might be in a store then being finished, and about to be occupied by the mortgagor in South Reading.

It was provided in the mortgage, that until default by the mortgagor, in the performance of the condition or some part thereof, it should be lawful for him to retain possession of the

mortgaged goods and chattels, using and making sales thereof, from time to time, in the usual course of his trade, other goods and chattels of at least equal value being substituted in the place of those sold, if the mortgagor applied the proceeds of such sales to the payment, according to its tenor, of the note secured by the mortgage; but if the goods, wares and merchandise, or any part thereof, should be attached by any other creditor of the mortgagor, before the note should be paid and discharged, then it should be lawful for the mortgagee to take immediate possession of the same goods and chattels, or of those substituted for them, to his own use.

On the same 8th of May, when the mortgage was given, the parties signed and sealed an indenture of two parts, reciting the partnership and the dissolution thereof, by which Barnard assigned to Stearns all his right, title, interest, and share in and to all the stock in trade, goods, merchandise and effects belonging to the copartnership, of whatever kind and nature, and wherever situated, and also all his interest in the debts due and owing to the firm; and by which Stearns undertook to pay and discharge all the debts and liabilities of the firm, and to indemnify Barnard and save him harmless against the same.

The insolvent, after the dissolution with Barnard, continued his business as a trader, buying and selling as he had been previously accustomed to do, until the 13th of May, 1845, when he entered into copartnership with Joshua H. Thwing, and put into the new firm the stock which he then had on hand, as his share of the capital stock. Shortly after the formation of this copartnership, Stearns and Thwing moved their goods into a new store, being the same which was referred to by Stearns in the mortgage to Barnard, where the partners, Stearns and Thwing, continued their business of buying and selling, in the usual mode of traders, until the 4th of July, 1845.

On the 3d of July, 1845, Batchelder, the guardian of Barnard, sued out a writ in that capacity, against Stearns, on the note signed by the latter for $1100, and delivered the same

to an officer for service, with a direction indorsed thereon, to "attach all his (Stearns's) property." By virtue of this writ, the officer to whom it was directed attached the house and store occupied by the defendant therein named, together with all the goods, wares, merchandise and furniture in and around the same, and the defendant's interest therein. The officer, at the same time, put a keeper into the store of Stearns and Thwing, under a written authority from him, and continued such keeper in possession therein, until the 9th of July, when, by the direction of the plaintiff's attorney, the keeper was discharged, and delivered the keys of the store to Thomas Sumner, who had been appointed a messenger to take possession of the estate of Stearns as an insolvent debtor.

On the 7th of July, 1845, Stearns applied to George W. Warren, esquire, a master in chancery, for the benefit of the act for the relief of insolvent debtors ; upon which a messenger was appointed to take possession of his estate, who, on the same day, made a demand upon the keeper for the possession of the property in his custody. On the 9th, the attachment was discharged, as already stated, and the property delivered to the messenger.

On the 15th of July, the messenger gave the insolvent written directions, to sell nothing out of the store but what was perishable; to let any mortgagee come into the store to examine or identify any property named in his mortgage ; to let any other person claiming an interest therein examine the property and the inventory ; and to see that the property was kept safely. The messenger also directed the debtor, after the inventory should be finished to the satisfaction of all parties, to lock up the store and put the keys into some disinterested person's hands, not to be again entered by any one alone, or to hand the keys to the messenger with the inventory. In accordance with these directions, the keys of the store were put into the hands of a disinterested person.

Immediately after these directions were given by the messenger, an inventory of the property claimed by Barnard, under his mortgage, was made by William Hutchinson, in the pres-

ence of Stearns, Thwing, and Barnard, the latter pointing out the goods claimed by him, which were thereupon separated from the other goods in the store. When the inventory had been prepared, it was looked over by Stearns, and some of the items, which he at first supposed were a part of the mortgaged goods, being ascertained not to be so by a reference to bills of goods purchased after the mortgage was given, were struck from the inventory. The parties, Stearns and Barnard, thought that the inventory, as corrected, contained a true list of the goods then remaining, that were in the store when the mortgage was given.

At the first meeting of the creditors of Stearns, held on the 11th of August, 1845, the respondents were chosen assignees of his estate, and accepted the appointment. At the same meeting, Barnard, the petitioner, applied to the master for leave to sell the property claimed by him under his mortgage, which had been taken possession of by the messenger, as already stated, and which was subsequently received into the possession of the assignees. On this application, the parties were heard by the master, and the prayer thereof being refused, Barnard claimed an appeal. After this proceeding, it was agreed by the parties, that the property should be sold without prejudice to the rights of either, and it was sold accordingly.

The respondents, in their answer, alleged, that the mortgage was void, because it contained no sufficient certainty of description or means of identifying the property, upon which it purported to give security, and because it authorized a removal thereof and an admixture with other property, and a sale of the same by the mortgagor ; that, at the time it was given, Barnard had reason to believe that Stearns was insolvent ; that the mortgage was taken in order to give Barnard an unlawful preference over other creditors ; that the property sought to be obtained in this proceeding was not the property referred to in the mortgage, the mortgagor having sold the mortgaged property, with the consent of the mortgagee, on the 13th of May, 1845, to Joshua H. Thwing ; that the mort-

gagee, on the 3d of July, 1845, then being an infant under the age of twenty-one years, by his guardian, sued out a writ of attachment against the mortgagor, on the note secured by the mortgage, and caused the mortgaged property to be attached thereon, and held in the possession and custody of the officer, until the same was taken possession of by the messenger in insolvency.

*A. H. Nelson* and *C. P. Judd,* for the petitioner.

*C. B. Goodrich* and *G. Farrar,* for the respondents.

Shaw, C. J.    This is an original petition, in the nature of an appeal from a decision and adjudication of George W. Warren, esquire, a master in chancery for this county, made on the 22d day of August, 1845. The case comes before this court on an agreed statement of facts.

From this statement it appears, that Charles H. Stearns was an insolvent debtor ; that proceedings in insolvency against him were duly instituted before the master ; and that at the first meeting of creditors, held on the 11th of August, 1845, Lilley Eaton and Thomas Sumner, the respondents, were duly chosen assignees of the estate and effects of the insolvent ; that at the same meeting, Benjamin F. Barnard presented a petition to the master, setting forth a note and mortgage of personal property, to secure the same, made to him by the insolvent debtor, which are particularly described in the petition, and in the agreed statement of facts, praying that an order might be passed by the master, directing the property embraced in the mortgage to be sold, and the proceeds applied to the payment of the petitioner's note, pursuant to the provisions of the insolvent act of 1838, *c.* 163, § 3, *and that the balance of such note left unpaid after the application of such proceeds, if any, might be proved as a debt against the estate of the insolvent.

After notice to the parties interested, and full hearing on this petition, the master declined granting the same ; and, at a court held on the 22d of August, 1845, adjudged that it be disallowed.   On the 30th of the same August, the petitioner gave notice to the master of his desire to appeal ·from the

adjudication, and requested that the claim might be entered on the minutes of the proceedings. The present petition to this court bears date the 14th of October, 1845; and, at the same term of the court, the respondents, protesting against the petitioner's right of appeal, appeared and filed an answer.

The first question, in the present case, is, whether the court have jurisdiction to revise the judgment of the master. It is contended, on the part of the respondents, that as the statute gives no appeal from a decision of the master, in a case like this, the court has no appellate jurisdiction, and that, upon the principle of *res judicata,* the decree of the master must be taken to be final.

So far as this proceeding is to be strictly considered as an appeal, we think the objection is well taken. But, although the proceedings before the master were in form the claim of an appeal, yet this petition bears all the characteristics of an original proceeding, and if the court have jurisdiction to hear and act upon it, as an original petition, the respondents have consented to appear, as indeed they would be bound to do, if duly served with the order of notice thereon, of which no question is made. And as an original bill or petition, the court are of opinion, that they have jurisdiction to hear and consider it, under the eighteenth section of the original insolvent act of 1838, *c.* 163, which gives this court not only a general superintendence and jurisdiction, as a court of chancery, in all cases arising under the act, with power to make general rules and prescribe forms, but also in all cases not otherwise specially provided for, upon the bill, petition, or other proper process, of any party aggrieved by any proceedings under the act, to hear and determine the case, as a court of chancery, and to make such order and decree thereon as law and justice may require.

This power is given to this court in broad terms, and it seems to us, that it was intended to be so given, in order to secure a consistent and uniform application of the law, in all cases, which could not be particularly foreseen. The more simple remedy of an appeal was given, in the cases most

likely to occur frequently, those of the proof of debts ; but as there would be probably many questions springing up in the administration of a new and extensive system, it was the policy of the law to allow an application to this court, by the summary process of petition, or the more elaborate proceeding on a bill in equity, as the nature of the case might require. *Wheelock* v. *Hastings,* 4 Met. 504. And this power has been exercised in several other cases, arising before judges of probate and masters in chancery. *Eastman* v. *Foster,* 8 Met. 19. Under this provision, the court are of opinion, that this power extends to the revising of the decisions of judges of probate and masters in chancery, in proper cases, and where the statute has given no appeal, nor indicated any mode in which relief shall be had, and that they have jurisdiction in the present case.

2. The other questions arise upon the deeds and documents referred to, and upon the agreed statement of facts. We do not perceive, that the fact of the minority of the plaintiff, when he entered into copartnership with the insolvent, can affect any of the questions before us. It is agreed, that he brought money into the copartnership ; that he sold out to the insolvent, upon a dissolution ; that the property was actually delivered to the insolvent and went into his exclusive possession ; and that he afterwards mortgaged it to the plaintiff. The validity of the sale to the insolvent did not depend wholly upon his ability and legal capacity to execute a bill of sale under seal ; but it took effect from the delivery of the goods, and his title thereto has never been drawn in question. None of the contracts and stipulations entered into by him, have been avoided on the ground of infancy, and neither the insolvent nor his creditors have reason to complain of the plaintiff on that score.

It was intimated in various stages of the argument, that this mortgage was fraudulently made, to delay or defraud creditors, or with a view to give a fraudulent preference in violation of the insolvent laws. But we are of opinion, that this question is not open upon the facts. *Prima facie* the

note and mortgage were given for a good and valuable consideration, at a fair and adequate value ; and if the respondents had intended to impeach the transaction, on the ground of a fraudulent intent and purpose, or a secret trust to hold the property against the just claims of creditors, the averments to that effect should have been set forth more particularly in the answer, and all the evidence on which such charge rested should have been laid in some form before the court. Taking the facts as stated, we can see no pretence for setting aside the mortgage, on the ground of fraud. *Marden* v. *Babcock*, 2 Met. 99; *Briggs* v. *Parkman*, 2 Met. 258.

The first exception taken to the validity and legality of the petitioner's mortgage is, that there is no sufficient description to identify the goods embraced in it. This is rather an objection to the application of the mortgage to any particular goods claimed than to the validity of the mortgage itself. A mortgage is an executed contract; a present transfer of title, although conditional and defeasible; it can therefore only bind and affect property existing and capable of being identified at the time it is made ; and whatever may be the agreement of the parties, it cannot bind property afterwards to be acquired by the mortgagor. *Jones* v. *Richardson*, 10 Met. 481 ; *Winslow* v. *Merchants Ins. Co.* 4 Met. 306.

It is manifest, therefore, that whatever were the terms of this mortgage, it could not apply to goods not then in existence, or capable of being identified, or to goods intended afterwards to be purchased to replace those which should be sold. If, therefore, at the time when this claim was made, none of the goods were capable of being identified, the mortgage must fail, not because it was void in its origin, but because there is no subject to which it can now apply. But if some of the goods can be identified, to that extent the objection is obviated, and to that extent, therefore, the claim of the plaintiff is valid.

Another objection to the plaintiff's title is, that by the terms of the mortgage, the mortgagor retained possession with

a power to sell, and that he did in fact sell, by putting in the mortgaged property, soon after the mortgage, as his share towards the stock of a partnership entered into by him with Thwing. This, at most, can be regarded as the sale of an undivided part only to Thwing, the mortgagor retaining the other part ; but we think it was not a sale in the ordinary course of business, where a retail trader mortgages his stock with an intent to carry on and not suspend his business, as in the case of *Briggs* v. *Parkman*, 2 Met. 258, and that the sale was not within the power.

But whatever ground Thwing might have, to urge these objections against the claim of the mortgagee, they cannot, we think, be taken by these respondents, who claim under the insolvent, the mortgagor, and themselves insist on their right to hold the mortgaged goods as his property, and to take and apply the proceeds thereof to the satisfaction of his general creditors.

It is further insisted, on the authority of *Jacobs* v. *Latour*, 5 Bing. 130, that by attaching the specific goods, the plaintiff waived his lien, and is estopped from afterwards setting it up. In the case cited, the specific property was taken in execution by order of the creditor; when his lien, if he had any, consisted solely in his right to retain for services done, and depended entirely upon his actually retaining possession.

But the title of a mortgagee is not that of a mere lien, in the strict legal sense of that term, dependent on the retaining of possession ; but a real interest, defeasible and conditional, it is true, but still a proprietary interest in the thing. But another answer is, that it does not appear, that any order was given to attach any of the mortgaged goods specifically, but only to attach his, the defendant's goods, which might have been done with a view to attach those goods, which had been purchased and added to the stock after the mortgage, and which the mortgage would not hold.

On the whole, the court are of opinion, that the decision of the master must be reversed, and that the petitioner is entitled to an order for the sale of the mortgaged goods as prayed for.